IN THE UNITED STATES DISTRICT COURT
NORTHISN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REGINALD T. BAILEY, | ) | CASE NO.  4:23-CV00696 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | REPORT & RECOMMENDATION |
| | ) | |

Plaintiff, Reginald T. Bailey ("Bailey"), challenges the final decision of Defendant, Commissioner of Social Security ("Commissioner"), denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 et seq. ("Act"), and for Supplemental Security Income ("SSI") under Title XVI of Act.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that Bailey's request for remand pursuant to sentence six of §405(g) be DENIED. It is further recommended the Commissioner's final decision be REVERSED AND REMANDED under sentence four of §405(g) for further consideration consistent with this opinion.[1]

---

[1] The United States Supreme Court has clarified that remand under sentence four and six of 42 U.S.C. § 405(g) are distinct. *See Sullivan v. Hudson*, 490 U.S. 877, 885-86 (1984). Accordingly, this Court has found it is proper to deny sentence six remand while at the same time granting a remand under sentence four.  *See e.g., McFerren v. Comm'r of Soc. Sec.*, No. 3:11-CV-1677, 2012 WL 1865467, at *19 (N.D. Ohio May 4, 2012), *report and recommendation adopted*, No. 3:11

1

## I.  PROCEDURAL HISTORY

In August and July 2019, respectively, Bailey filed applications for DIB and SSI. Transcript ("Tr.") at 116, 220-21. He alleged a disability onset date of May 23, 2019, and claimed disability due to obesity; osteoarthritis of the left and right shoulders and bilateral hip; "djd of the right foot and podiatric impairments;" bone spurs of the right foot both ankles and knees; myopathy; neuropathy ob both feet; back problems; and diverticulitis." (Tr. 205-06). His applications were denied initially and upon reconsideration, and Bailey requested a hearing before an administrative law judge ("ALJ"). (190-231, 278)

On February 24, 2022, ALJ Charles Shinn held a hearing on Bailey's applications. (Tr. 134-66) Bailey, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.*) On April 6, 2022, the ALJ issued a written decision finding Bailey was not disabled. (Tr. 113-27) Bailey appealed the decision to the Appeals Council. He submitted additional information to the Appeals Council including a May 17, 2022, Sworn Statement by Pamela Deitelbach, DPT. However, on June 9, 2022, the Appeals Council declined further review and the ALJ's decision became final. (Tr. 8)

Bailey then filed the instant Complaint challenging the Commissioner's final decision. (Doc. No. 1)  The parties have completed briefing in this case. (Doc. Nos. 13, 14, 15) In his brief, Bailey lists six assignments of error:

1. This matter must be remanded for the Commissioner/Administrative Law Judge (ALJ) to consider the new and material evidence of the Sworn Statement of Dr.

---

CV 1677, 2012 WL 1866581 (N.D. Ohio May 22, 2012); *May v. Astrue*, No. 4:10CV1533, 2011 WL 3490186, at *10 (N.D. Ohio June 1, 2011), *report and recommendation adopted*, No. 4:10CV1533, 2011 WL 3490229 (N.D. Ohio Aug. 10, 2011); *Walton v. Astrue*, 773 F. Supp. 2d 742, 750, 755 (N.D. Ohio 2011); *See also Davis v. Astrue*, No. CIV.A.5:08-282-DCR, 2009 WL 301940, at *11 (E.D. Ky. Feb. 4, 2009); *Williams v. Barnhart,* 407 F. Supp. 2d 862, 865 (E.D. Mich. 2005).

Pamela Deitelbach of May 17, 2022 and covering the period from 2020 with comments, opinions and responses to the statements of the ALJ in his unfavorable decision of April 11, 2022.

2. The ALJ erred by not finding the plaintiff's lymphedema a severe impairment; his unfavorable decision is not based upon substantial evidence, thus, requiring remand.

3. The ALJ erred by failing to address the mental health impairments and limitations of plaintiff, failed to address the neuropsychological report of Carla R. Arlien, PhD, and to determine his mental limitations are severe impairments. The ALJ committed an error of law, his decision is not based upon substantial evidence and requires remand.

4. The ALJ erred by erroneously finding plaintiff has a high school education, resulting in an incorrect hypothetical question being asked to the Vocational Expert (VE).

5. The ALJ erred by erroneously finding plaintiff has the ability to engage in a reduced range light job and as such his unfavorable decision is not based upon substantial evidence.

6. The ALJ erred by failing to ask a hypothetical question that encompassed all of plaintiff's impairments and as such is not based upon substantial evidence.

(Doc. No. 7 at 13)

## II. EVIDENCE

### A. Personal and Vocational Evidence

Bailey was born in 1974 and was 45 years-old at the time of his alleged disability onset date, making him a "young individual age 18-49" under social security regulations. (Tr. 125) *See* 20 C.F.R. § 404.1563 and 416.963 He graduated from high school and took special education classes. (Tr. 125)

### B. Relevant Medical Evidence

#### 1. Treatment Notes

**Lymphedema.** Bailey participated in physical therapy for lymphedema from August 2021 through January 2022. At the beginning of therapy, he completed an "Injury and Past Medical

History Questionnaire." (Tr. 2232) On that form, Bailey reported that he was working part-time as a security officer, that he had no formal restrictions on his ability to work, and that his normal work duties included "sitting for extended periods" and "standing for extended periods." (*Id.*) His normal work duties also included driving and walking. (*Id.*) During his initial evaluation, Bailey reported experiencing swelling in his feet and ankles for a year. (Tr. 2251) It was noted that he presented with "increased girth and fibrosis mostly around his ankles and feet." (Tr. 2253) He was assessed as having stage 2 lymphedema. (*Id.*) Bailey declined compression garments at the time because he wanted to discuss reimbursement with his insurance company. (*Id.*) He returned for an appointment shortly after the initial evaluation and presented with increased girth. (Tr. 2259, 2263) He was given compression wrapping. (*Id.*)

After starting compression wrapping, Bailey reported his legs were looking better and he presented with decreased girth and fibrosis. (Tr. 2265) On August 26, 2021, Bailey was given compression stockings. (Tr. 2278) Throughout August and September 2021, Bailey's fibrotic tissue was reported as 2/4 (moderate). (Tr. 2262, 2270, 2277, 2282, 2285, 2289). His gait was recorded as normal. (*Id.*) At a September 14, 2021, physical therapy ("PT") follow-up for lymphedema in his legs, Bailey reported his leg pain was a 1/10 and that he was happy with his progress. (Tr. 2288) He specifically noted that his, "legs [were] so much smaller." (Tr. 2291) His "rehabilitation potential" was listed as "good." (Tr. 2291) On September 21, 2021, Bailey reported that overall his legs felt much better since starting therapy. (Tr. 2295) At a PT appointment the following month, Bailey reported that his legs were not as hard, and he felt the difference when walking. (Tr. 2303) Bailey's progress was fair, and he was encouraged to do daily calf stretches. (Tr. 2305) On October 19, 2021, Bailey stated that things were "really crazy at work" and asked to decrease the frequency of his physical therapy visits to once every other

4

week. (Tr. 2311 (Tr. 2311) At that point, Bailey's measurements were stable. (Tr. 2314) It was decided Bailey would cut back to visits once every other week. (Tr. 2311)

On November 4, 2021, Bailey reported that he was exercising more and losing weight. (Tr. 2315) He presented with consistent girth measurements and moderate fibrosis. (Tr. 2317-18) On November 16, 2021, Bailey forgot his stockings at home and had some increased girth but reported a 1/10 on the pain scale. (Tr. 2319) It was noted he presented with stage 2 lymphedema of his bilateral lower extremities. (Tr. 2232) On November 30, 2021, Bailey again reported leg pain at a level 1/10 and said he was riding an exercise bike and trying to lose weight. (Tr. 2327) A slight decrease in girth and moderate fibrosis was noted. (Tr. 2329) On December 14, 2021, Bailey had decreased fibrosis and girth. (Tr. 2334) On December 28, 2021, Bailey report that "overall his legs feel good" but he still had some cramping in his feet. (Tr. 2335) Increased girth measurements and moderate fibrosis were noted. (Tr. 2338) During December 2021, he rated his pain at 2/10 and exhibited normal gait. (Tr. 2331-32) Between October 2021 through January 2022 pitting edema was also noted as present. (E.g., Tr. 2316, 2340)

January 2022 physical therapy records state that Bailey made "excellent progress" with his lymphedema. (Tr. 2342) Bailey reported leg pain at level of 1/10, said he was "doing good," and exhibited normal gait; his measurements were consistent; and notes show that he "[had] a good understanding of his condition and how to manage it on his own." (*Id.*)  His physical therapist noted that Bailey "met most of his goals and [was] independent with self care," and discharged him from physical therapy. (*Id.*) The provider stated that Bailey had made "excellent progress in his lymphedema care" and had been "consistent with his measurements and has been wearing his stockings consistently." (Tr. 2342) Records demonstrate that Bailey met most of his goals, but he had not met his goal to "[i]mprove standing and walking endurance by 20% via [the Lower

5

Extremity Functional Scale ("LEFI")]." (*Id.*) Bailey's LEFI score was rated at 41% of maximum function. (Tr. 2339) Bailey's Lymphedema Life Impact Scale ("LLIS") was 60%. (*Id.*) The LLIS and LEFI scores are listed under the subjective portion of the treatment notes. (*Id.*)

**Lower Extremity Pain.**  Shortly after his disability onset date, in June 2019, Bailey had X-rays of his feet and ankles. The images showed some midfoot degenerative joint disease ("DJD") and osteophytes of the left ankle joint. (Tr. 1355) It was recommended that Bailey continue conservative treatment, including a prescription for Voltaren gel. (*Id.*) In September 2019, it was noted that Bailey had osteoarthritis of the knee and ankle/heel spurs. (Tr. 1184). Bailey reported his pain level at 9/10 and stated it was "very difficult" for him to get in and out of bed; take a bath; bend down to pick up clothing; or do chores such as vacuuming or yard work. (Tr. 1184-1186) He stated that he experienced "some difficultly" walking, climbing steps, and running errands. (*Id.*)  That same month Bailey complained of worsening neuropathy. (Tr. 1353) On examination, it was noted Bailey had chronic venous stasis and midfoot DJD but the exam was otherwise unremarkable. (*Id.*)

On November 5, 2019, Bailey present to Thomas Boniface, M.D. for bilateral knee pain aggravated by squatting, stairs, and transfer. (Tr. 1319) Bailey reported worsening pain and had gained 35 pounds. (*Id.*) Knee x-rays showed spurs on the patella of the right knee, consistent with chronic patellofemoral pain syndrome bilaterally. (*Id.*) Physical therapy was recommended. On November 11, 2019, Bailey presented to Boardman Orthopaedics and Rehabilitation ("Boardman") and  reported pain in both knees, particularly when squatting or walking up steps. (Tr. 1313) He stated his pain was aggravated by "walking, standing, stairs, standing after sitting for awhile" and was getting worse. (*Id.*) It was noted that Bailey's orthopedic exam and gait were

normal. (Tr. 1315) Physical therapy was recommended but not initiated. (Tr. 1315-18) In January

2020, Boardman discharged Bailey due to lapse in care and noted:

> Pt attended evaluation only. Pt notified therapy he is changing insurance and will call to give us info. Pt never contacted therapy. Due to time lapse since evaluation, new evaluation would need completed if/when pt calls to return.

(Tr. 1390)

An August 2020 primary care exam was unremarkable regarding Bailey's lower

extremities. (Tr. 2395) At a January 15, 2021, podiatry appointment, Bailey reported left foot pain

and numbness. (Tr. 2236) It was noted that Bailey was continuing Neurontin 300mg three times

daily and using Voltaren gel with some relief. (*Id.*) Bailey declined a cortisone injection of his

foot because was getting back injections. (*Id.*) Diagnoses included left foot pain, tenosynovitis of

the left foot, arteritis of the left foot and type 2 diabetes mellitus. (Tr. 2238) There was no edema

in the bilateral feet or ankles. (Tr. 2238) It was recommended Bailey continue his medication and

avoid tight fitting shoes. (*Id.*)

**Back and Shoulders**. In February 2019, three months prior to Bailey's alleged disability

onset date, a back MRI showed mild multi-level disc bulging and degeneration along with left

sided disc protrusion. (Tr. 1422, 1431, 1436) There was no imaging of Bailey's back conducted

during the relevant period in this case. An MRI of Bailey's left shoulder was also taken in

February 2019 and was compatible with rotator cuff tendinitis/tendinosis. (Tr. 902-904)

On May 28, 2019, Bailey treated with Janeen Masternick-Black, DO, for management of

his back pain. Dr. Masternick-Black stated the impression was: myofascial pain, sacroiliac joint

pain, chronic bilateral low back pain without sciatica, and chronic bilateral thoracic back pain.

(Tr. 696) The doctor also stated that most of the visit was spent discussing disability paperwork

but she opined that there were "no **findings** including **imaging** and exam **findings** to prevent

7

[Bailey] from working." (*Id.*) (emphasis in original) She also opined that better diabetes control would help and recommended a Functional Capacity Evaluation ("FCE"). (*Id.*) On October 15, 2019, Bailey complained of back pain. (Tr. 1268) On exam, he could heel toe walk but had a short stepped and forward flexed gait. (Tr. 1267-1272) Shoulder pain was also noted, as well as limited lumbar range of motion and painful arc of motion in neck and low back. (Tr. 1270)

A January 2020 examination revealed paralumbar spasms, decreased flexion of 50% and bilateral SI tenderness with palpitation. (Tr. 2349-2350) He was diagnosed with lumbar degenerative disc disease, prescribed Neurotin, and referred to therapy and a FCE. (*Id.*) In August 2020, Bailey complained of left shoulder pain. (Tr. 2391 On exam, he exhibited a mild range of motion decrease in the right shoulder but his exam was otherwise unremarkable. In September 2020, Bailey had a bilateral L3, 4, 5 medial branch nerve blocks by his pain management physician. (Tr. 2166) He had a second nerve block to the same area the following month. (Tr. 2114) In December 2020, Bailey had a therapeutic thoracic epidural steroid injection at T7-8 for thoracic disc displacement, thoracic radiculopathy. (Tr. 1995) In January 2021, Bailey underwent a left lumber facet medial branch radiofrequency ablation at L3, 4, 5. (Tr. 1926)

**Mental Health**.  In February 2019, prior to Bailey's May 2019 alleged onset date, Bailey met with Carla R. Arlien, Ph.D. for a psychological intake assessment. Bailey reported anxiety/tension, cognitive problems, depression, and difficulty with sleep. (Tr. 645) He denied prior psychiatric care. (*Id.*) Bailey reported that he had a learning disability growing up but he attended some college but he did not make the college aware of his learning disability. (Tr. 646) His diagnoses were adjustment disorder with mixed anxiety and depressed mood (primary) and dementia in other diseases classified elsewhere without behavioral disturbance (rule out). (Tr. 647)

The next month Dr. Arlien conducted a neuropsychological evaluation. (Tr. 648-52) Dr. Arlien concluded that Bailey performed at or above expected levels in some areas. (Tr. 651) He performed "slightly below expected levels" in attention levels and verbal fluency. (*Id.*) Dr. Arlien also stated that Bailey evidenced impairment in the area of mental and visual processing speed; story learning; story memory; and mental flexibility and set shifting. (*Id.*) She opined that Bailey met the criteria for mild cognitive impairment "due to most likely vascular changes in the brain." (*Id.*) She further opined that Bailey met the criteria for major depression and generalized anxiety disorder but noted they did not appear affect his test results. (*Id.*) Bailey has not pointed to any further mental health treatment.

### 2. Medical Opinions

**Functional Capacity Evaluations ("FCE").** Bailey asserts that a July 2019 FCE evaluation "was in essence invalid as the plaintiff stopped the test." (Doc. No. 13 at 11 citing Tr. 688-92) Though some parts of the FCE were completed, it was noted that "Client stopped test" at one point and that Bailey's "performance today was that portion of capacity the client was willing or able to produce." (Tr. 688, 691) The ALJ's opinion does not reference the July 2019 FCE.

Bailey underwent another FCE on February 13, 2020, with Pamela Deitelbach, DPT. (Tr. 1818-22) DPT Deitelbach found that Bailey could perform work in the "medium strength category" because he could lift up to 30 pounds and carry up to 25 pounds. (Tr. 1821) However, DPT Deitelbach opined that Bailey could only stand for 15 minutes, sit for 10 minutes, and walk 0.0 miles at any one time. (*Id.*) She further stated Bailey could do no balancing, crouching, stooping, kneeling, or crawling; no pinching; and no tactile shape discrimination. (*Id.*) In May 2022, shortly after the ALJ determined that Bailey was not disabled, Bailey submitted a sworn statement from DPT Deitelbach attempting to clarify her February 2020 opinion. (Doc. No. 13-1)

**State Agency Review – Physical Health.** In October 2019, state agency reviewing physician Kalpna Desai, M.D., found there was insufficient new and material evidence to deviate from the findings in Bailey's previous disability denial and adopted a prior RFC dated May 29, 2019, limiting Bailey to sedentary work except that he may frequently stoop, kneel, crouch, crawl; may occasionally climb ramps and stairs, but may never climb ladders, ropes or scaffolds; and may occasionally be exposed to humidity, wetness, and extreme cold. (Tr. 198-99)

In February 2020, state agency reviewing physician Michael Lehv, M.D., affirmed the findings of Dr. Desai. (Tr. 229-30)

**State Agency Review – Mental Health.** On October 29, 2019, state agency psychologist Jaime Lai, Psy.D. reviewed Bailey's record and opined he was moderately limited in his ability to maintain attention and concentration for extended periods; his ability to work in coordination with or in proximity to others without being distracted; and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 200) Dr. Lai further opined that, due to his condition, some variability in attention and pace would be expected and that Bailey has the capacity to perform simple and some routine multi-step tasks that are not fast paced and do not require adherence to strict time and production demands. (*Id.*) She believed he would likely do best in a setting where he could work away from the distraction of others to enhance focus. (*Id.*) Depression, anxiety, and neurocognitive disorders were listed as medically determinable impairments (MDIs) but marked as non-severe. (Tr. 196)

At the reconsideration stage, state agency psychologist David Dietz, Ph.D. found there was insufficient evidence overall to support any mental health limitations. (Tr. 228) It was noted

that Bailey missed two consultative exams. (*Id.*) Depression, anxiety, and neurocognitive disorders were again listed as MDIs but this time marked as severe. (*Id.*)

## C.    Hearing Testimony

On February 24, 2022, ALJ Charles Shinn held a telephonic hearing on Bailey's applications. (Tr. 134-66) Bailey represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.*) During the hearing, Bailey testified to the following:

- He has a driver's license and lives on his own. He takes medication for blood clots, diabetes, diverticulitis, high blood pressure, and chest pain. He experiences tremors throughout his body but mainly in his hands. Diabetes makes his tremors worse and his neuropathy causes numbness and "pins and needles" feelings. He wears compression socks and orthotics every day to prevent swelling because of lymphedema. He uses ice/heat, Tylenol, and muscle relaxers to relieve back and shoulder pain. He also gets injections in his back every six months but does not experience lasting relief. He uses a BIPAP for sleep apnea. He only sleeps two hours at a time before waking up in pain. Raising his arms and lifting up his left shoulder causes pain. He is unable to pick up much weight.

- Bailey was in physical therapy that ended in January 2022. He stated that the therapy "went good" and he was "pretty stable as much as I can." But noted that he has to take care of himself "not a lot of movement. You know, what is possible. Prop my feet up. It is pretty much 24/7." He had prior physical therapy for his shoulders also.

- For the last two years he has worked 24 hours a week as a security guard. Each week he works two eight-hour days and two four-hour days. He states he does not do a lot of walking on the job. He stated the public frustrates him. Bailey stated he typically calls off about four times a month due to his medical issues.

(Tr. 141-159) VE Michele Edge also testified at the hearing. (Tr. 160-65). The ALJ posed hypothetical scenarios to the VE about whether an individual of Bailey's age and education could work and, if so, what types of jobs could they perform with the following theoretical limitations:

1. Light work: can lift, carry, push and pull 20 and 10; sit 6 hours; walk 6 hours; cannot climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally operate foot controls bilaterally, occasionally stoop, kneel, crouch, and craw; occasionally reach overhead bilaterally; avoid exposure to extreme temperatures and concentrated exposure to humidity, wetness, dust, fumes, gases, and poorly ventilated

areas; avoid workplace hazard such as unprotected heights or exposure to dangerous, moving machinery; and no commercial driving. (Tr. 160-61)
- The VE testified the individual could perform work as a routing clerk, mail clerk, and merchandise marker. (Tr. 161)

2. The ALJ then added to hypothetical #1 that the individual can only occasionally handle and finger bilaterally.
   - The VE testified that the previous jobs would no longer be available. (Tr. 161) The VE also stated there are no jobs in the light range with occasional fingering and handling in light of the other stated limitations. (*Id.*)

3. The ALJ then asked the VE to assume the same limitations as in hypothetical #1 again but modify it such that the individual would cycle between standing for 15 minutes at a time and sitting for 10 minutes. (Tr. 163)
   - The VE testified that the DOT does not address sit/stand, but based on the VE's experience an individual with a stand-sit cycling at that frequency would not be able to conduct work. (*Id.*)

4. The ALJ then ask about tolerance for absenteeism and off-task behavior. (*Id.*)
   - The VE stated her experience indicated that the threshold for absenteeism is two days per month for several months in a row and the threshold for off-task time is 10%. (*Id.*) The VE stated that if an individual required more than two 15-minute breaks, they would not be able to engage in competitive employment. (Tr. 164)

Bailey's counsel had no questions for the VE. (Tr. 165)

### III.    STANDARD FOR DISABILITY

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful

12

activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).    Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and*  416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2.    The claimant has not engaged in substantial gainful activity since May 23, 2019, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.    The claimant has the following severe impairments: obesity; hypertension; diabetes mellitus; degenerative disc disease of the lumbar and thoracic spine; osteoarthritis of the left shoulder; osteoarthritis of the bilateral hips; patellofemoral pain syndrome of the bilateral knees; degenerative joint disease of the bilateral feet; pulmonary embolism; obstructive sleep apnea; and peripheral neuropathy (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; occasionally operate foot controls (bilaterally), or reach overhead (bilaterally); he must avoid concentrated exposure to extreme temperatures, humidity, or wetness;

he must avoid concentrated exposure to dust, fumes, gases, odors, and poorly ventilated areas; and he must avoid all exposure to workplace hazards such as unprotected heights, or dangerous moving machinery, and he cannot perform commercial driving. This finding of residual functional capacity departs from that which is memorialized in the prior Decision in order to account for the current state of the claimant's impairments, and the improvement in his ability to stand and walk.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on May 12, 1974 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964). The claimant's representative argued in her pre-hearing brief that the "claimant does not have a high school education as per the 2019 unfavorable decision," but later indicates that he "was 19 years of age at the time he graduated high school in June 1993." (Ex. C13E) The claimant testified during the telephone hearing that he did graduate high school.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from May 23, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 119-26)

## V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011).  Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper

legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v.Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also His v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th

Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D.Ohio July 9, 2010).

## VI.  ANALYSIS

Bailey lists the following six assignments of error in his merits brief:

1.  This matter must be remanded for the Commissioner/Administrative Law Judge (ALJ) to consider the new and material evidence of the Sworn Statement of Dr. Pamela Deitelbach of May 17, 2022 and covering the period from 2020 with comments, opinions and responses to the statements of the ALJ in his unfavorable decision of April 11, 2022.

2.  The ALJ erred by not finding the plaintiff's lymphedema a severe impairment; his unfavorable decision is not based upon substantial evidence, thus, requiring remand.

3.  The ALJ failed to address the neuropsychological report of Carla R. Arlien, PhD. (Tr. 645-652) which addresses plaintiff's psychological impairments and limitations.

4.  The ALJ stated plaintiff failed to attend two consultative mental status examination and there is a lack of evidence in the record of any mental health impairment. This is an error. (Tr. 124-125)

5.    The ALJ erred by assuming that plaintiff has a high school education. (Tr. 125)

6.    The ALJ's finding that plaintiff is able to engage in a reduced range of light activity is not supported by substantial evidence.

## A.    Sentence Six Remand

Bailey first argues that he is entitled to a "sentence six remand" for the consideration of new and material evidence—a May 17, 2022, Sworn Statement of Pamela Deitelbach, DPT. (Doc. No. 13-18)  A "sentence six remand" under 42 U.S.C. § 405(g), may be granted if a claimant can show that "evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) quoting *Cline v. Comm'r of Social Security*, 96 F.3d 146, 148 (6th Cir.1996). As the Sixth Circuit explained in *Foster*:

> For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir.1988). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (1984) (per curiam). As noted above, the burden of showing that a remand is appropriate is on the claimant. *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986).

*Id.* Here, Bailey as not met his burden to show that remand is appropriate because he has not demonstrated the evidence is "material" or that he had "good cause" for failing to acquire and present the evidence to the ALJ.

**Good Cause.**  Bailey has not shown good cause for his failure to acquire and present Dr. Deitelbach's statement at the time of his ALJ hearing. In *Wasik v. Comm'r of Soc. Sec.*, the court found that a similar post-hearing clarification of a doctor's pre-hearing opinion did not constitute

17

"good cause" under sentence six. No. CIV. 09-14933, 2011 WL 740686, at *4 (E.D. Mich. Feb. 24, 2011). In *Wasik*, the Court explained:

> Plaintiff does not have a valid reason for not timely submitting a more completed form; he submitted the form as Dr. Easton had responded prior to the ALJ's determination, and did not, after receiving the form, contact Dr. Easton pre-ALJ-hearing. The new and improved and more completed Dr. Easton report, based on evidence existing prior to the ALJ's decision, will not be treated as new evidence. Plaintiff has not shown good cause for failing to submit this evidence prior to the ALJ's decision

*Id.* The court's reasoning is sound.

Bailey argues that "[g]ood cause is shown" because the evidence "did not exist at the time of the administrative hearing or at the time of the unfavorable decision." (Doc. No. 13 at 18) However, the Sixth Circuit holds that, "the mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the "good cause" requirement." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 725 (6th Cir. 2012). The Sixth Circuit takes "a harder line on the good cause test" and requires that the claimant "give a valid reason for his failure to obtain evidence prior to the hearing." *Oliver v. Sec'y of Health & Hum. Servs.,* 804 F.2d 964, 966 (6th Cir.1986); *see also Heart v. Comm'r of Soc. Sec.*, No. 22-3282, 2022 WL 19334605, at *3 (6th Cir. Dec. 8, 2022) ("Because Dr. Wornock refers only to Heart's medical history prior to the hearing before the ALJ, Heart has not provided a reasonable justification for failing to obtain and present the letter to the ALJ."); *Ketron v. Comm'r of Soc. Sec.*, No. 2:22-CV-00123-SKL, 2023 WL 6333618, at *7 (E.D. Tenn. Sept. 28, 2023) ("Plaintiff, who bears the burden on this issue, does not provide any reason why she failed to obtain the modified records and the corresponding letter from Dr. Carroll prior to the hearing, let alone a 'reasonable justification.' ")*; Despain v. Commissioner*, 2014 WL 6686770 (E.D.Mich.) ("[G]ood cause contemplates ... more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability"). Here, Bailey has not provided a reasonable justification for failing to obtain

18

or submit the evidence prior to the ALJ's decision. Accordingly, Bailey has not met the good cause standard.

Bailey's evidence also fails to meet the good cause requirement for a second reason—it was generated for the purpose of proving disability. "Additional evidence generated for the purpose of attempting to prove disability in contrast to evidence produced by continued medical treatment does not meet the good cause requirement of the Act." *Powell v. Comm'r of Soc. Sec.*, No. 3:07cv074, 2008 WL 886134, at *9 (S.D.Ohio March 28, 2008) (Rice, J.) (*citing Koulizos v. Sec'y of Health & Human Servs.,* 802 F.2d 458 [table], 1986 WL 17488, at *2 (6th Cir. Aug. 19, 1986) ["The test ... is that good cause is shown for remand if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability."]); *See also McClain v. Comm'r of Soc.* Sec., No. 1:13CV00051, 2014 WL 517459, at *7 (N.D. Ohio Feb. 7, 2014) ("Moreover, by its own nature Dr. Martinek's consultative examination was generated for purposes of attempting to prove disability. Therefore, it cannot meet the good cause requirement of the act."); *LeMasters v. Comm'r of Soc. Sec.*, No. 3:07CV224, 2008 WL 4426900, at *11 (S.D. Ohio Sept. 25, 2008) (finding claimant lacked "good cause" because new medical opinion was "not a product of Plaintiff's ongoing medical treatment, but rather was generated for the express purpose of attempting to prove disability.") Bailey states:

> The purpose of the Sworn Statement of Dr. Pamela Deitelbach, taken on May 17, 2022, was to provide the Appeals Council with a response and answers to the ALJ's questions/statements/concerns about Dr. Deitelbach's Functional Capacity Evaluation (FCE) of February 13, 2020."

(Doc. No. 13 at 13). Thus, by Bailey's own admission, Dr. Deitelbach's 2022 statement was generated for the express purpose of attempting to clarify her statement to prove disability. As such, it cannot meet the good cause requirement. Where a claimant has not demonstrated good

cause, a sentence six remand should be denied regardless of the materiality of the documents. *Newsome v. Comm'r of Soc. Sec.*, 528 F. Supp. 2d 733, 736 (W.D. Mich. 2007) ("Newsome's failure to show good cause alone is reason enough to deny a sentence-six remand, without even considering the probability that the proffered evidence would have caused the ALJ to reach a different conclusion.")

Here, Bailey fails to demonstrate good cause. He has not shown good cause because he has not given a sufficient justification for failing to obtain the evidence prior to his hearing. He also does not meet the good cause requirement because the sole purpose of his evidence is to prove disability. Therefore, sentence six remand should be denied.

**Materiality**.  As Bailey has not established good cause, he is not entitled to remand. Assuming *arguendo*, that Bailey had established good cause, remand would still not be appropriate because Bailey fails to demonstrate that Dr. Deitelbach's statement is "material" under sentence six. Evidence is material only if "there is a reasonable probability that the [ALJ] would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357.

Bailey asserts that "[t]here is in fact a reasonable probability that the Commissioner/ALJ would have reached a different disposition of [his] disability claim," if the ALJ reviewed Dr. Deitelbach's statement. (Doc. No. 13 at 15-16). However, as the Commissioner notes, Dr. Deithelbach's sworn statement is "merely a repackaging and rehashing of her February 2020 opinion that the ALJ did he not find fully persuasive."[2]  (Doc. No. 14 at 14) Though Bailey asserts that the evidence is not cumulative, he admits that the 2022 statement "clarifies the

---

[2] Dr. Dettelbach's 2022 statement also references a post-hearing May 2022 examination. However, the Appeals Council found that the post-hearing examination did not relate to the period at issue (May 29, 2019, through April 11, 2022). (Tr. 2) Bailey has not shown that this finding was in error.

February 13, 2020 FCE and responds to the ALJ's questions and issues with the February 13, 2020 FCE." (Doc. No. 13 at 15) Thus, the evidence is cumulative. Evidence that is merely cumulative and does not show a "marked departure from previous exams is not "material" under 42 U.S.C. § 405(g). *Allen v. Comm'r of Soc. Sec.,* 561 F.3d 646, 654 (6th Cir.2009) ("The ALJ properly rejected this evidence as cumulative and [therefore] not material ...."); *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1233 (6th Cir.1993) (additional evidence is not material where it shows "no marked departure from previous examinations"); *Coughlin v. Comm'r of Soc. Sec.,* No. 1:13 CV 895, 2014 WL 3974161, at *9 (N.D. Ohio Aug. 12, 2014) ("[T]he evidence pre-dating the ALJ's decision is not material because they contain mostly cumulative information, and do not show a marked departure from previous examinations.") Here, the attempt to clarify the February 2020 is cumulative and does not show a marked departure for prior exams. Accordingly, it is not material.

Bailey's brief does not explain how the 2022 statement is material. Instead, he reargues what Dr. Deitelbach stated in the February 2020 FCE. See (Doc. No. 13 at 15-17) The only citation to Dr. Deitelbach's 2022 statement in Bailey's materiality argument is as follows:

> The ALJ appears to not understand that a person may have the lifting ability to lift at occasionally at medium work, but the standing, walking and sitting are at a much lower ability level rendering the claimant unable to sustain an eight hour per day job) (FCE testing of February 13, 2020, revealed that plaintiff was unable to walk in an eight-hour per day work setting). (Tr. 1819, 1821-1822, **See also, Dr. Deitelbach's statements at, Tr. 22, 26-28, 30-31**)

(*Id.* at 16) (emphasis added). This singular reference to the 2022 statement does not demonstrate the 2022 statement is material pursuant to sentence six.

**Summary.**  In summation, Bailey has not met his burden to show that a sentence six remand is appropriate. He has not demonstrated good cause because (1) he has not provided a sufficient explanation as to why the evidence was not obtained and presented prior to the hearing

and (2) Dr. Deitelbach's 2022 statement was generated for the purpose of proving disability. Remand is not appropriate because Bailey fails to show the 2022 statement is material. Cumulative evidence that does not show a marked departure from previous examinations is not material. Further, Bailey's materiality argument fails to address the 2022 statement and merely rehashes the 2020 opinion the ALJ found not fully persuasive For all of the above statement reasons, Bailey has not met his burden to show that a sentence six remand is appropriate.

The Court notes that it can only consider Dr. Deitelbach's 2022 statement in the context of a sentence six remand. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) ("the only method to have new evidence considered is to ask for a sentence six remand under 42 U.S.C. § 405(g)") Bailey has cited the statement in support of other arguments in his brief  (e.g., Doc. No. 13 at 20 citing to Tr. 15-112). However, the Court cannot consider these references.

### B.  Mental Health Limitations

Though this case is not appropriate for sentence six remand. It is recommended that the case be remanded under sentence four due to the ALJ's handling of Bailey's mental health limitations. In particular, the ALJ failed to address a medical opinion and the ALJ did not build an accurate and logical bridge between his handling of the medical evidence and his decision.

Bailey submits multiple arguments related to his mental health impairments. In his first sub-argument, Bailey contends that the ALJ failed to address the neuropsychological report of Carla R. Arlien, PhD. (Doc. No. 13 at 22-23) The Commissioner admits that Dr. Arlien's report was a medical opinion but argues that the ALJ was not required to discuss Dr. Arlien's report because the report predated Bailey's alleged onset date. (Doc. No. 14 at 15-16) The Commissioner further argues that Dr. Arlien's statements can be disregarded for using "inappropriately equivocal, rather than definitive, language." (*Id.* at 16)

Dr. Arlien performed an intake assessment of Bailey on February 1, 2019. (Tr. 645-47) Bailey reported short term memory loss and other cognitive problems. (Tr. 645) Dr. Arlien's mental status exam found Bailey with an anxious and depressed mood and a mildly impaired short-term memory. (Tr. 647) She diagnosed adjustment disorder with mixed anxiety and depressed mood and noted dementia and other diseases should be ruled out. (*Id.*) She recommended neuropsychological testing. (*Id.*) Bailey appeared for neurological testing on March 11, 2019. (Tr. 648-52) Bailey's mental status was anxious with a depressed mood, as well as mildly impaired short-term memory. (Tr. 649) In several areas of testing, Bailey performed in the average to above average range. (Tr. 650-51) However, Bailey performed at an "impaired range" in his speed of cognitive processing; recall of information after long delay; and executive functioning. (*Id.*) His visual processing speed and encoding of verbal information in a meaningful context were found to be in the "borderline impaired range (4th percentile)." (Tr. 650) Dr. Arlien found that Bailey met the criterial for mild cognitive impairment "due to most likely vascular changes in the brain," and that Bailey met criteria for major depression and generalized anxiety. (Tr. 651) However, it was noted depression and anxiety did not appear to affect his test results. (*Id.*) Bailey's post-testing diagnoses were listed as anterograde amnesia (primary) and mild cognitive impairment and adjustment disorder with mixed anxiety and depression. (*Id.*) Dr. Arlien opined that the following "may" help with Bailey's comprehension and attention, "minimizing distractions and taking frequent breaks," "allowing more time for tasks and doing one task at a time; "repeating information," and engaging in memory strategies like taking notes. (*Id.*) Dr. Arlien, also recommended neuroimaging. (*Id.*)

Since March 2017, agency regulations specify that the ALJ is to articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical

findings in [the] case record." 20 C.F.R. §§ 404.1520c(b) & 416.920c(b). "At a minimum, the ALJ must explain how he considered the supportability and consistency of a source's medical opinion in relation to the objective medical evidence." *Woodard v. Comm'r of Soc. Sec. Admin*., No. 5:22-CV-01728-JG, 2023 WL 6005004, at *7 (N.D. Ohio July 27, 2023), *report and recommendation adopted sub nom. Woodard v. Comm'r of Soc. Sec*., No. 5:22-CV-01728, 2023 WL 5842016 (N.D. Ohio Sept. 11, 2023) (citing 20 C.F.R. § 404.1520c(b)(2)). "The court cannot excuse the denial of a mandatory procedural protection" even if there is " sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 546 (6th Cir. 2004); *See also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."). In addition, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue,* 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue,* 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010). Here, the ALJ failed to satisfy the regulatory requirement and failed to build an accurate and logical bridge.

The Commissioner concedes that Dr. Arlien's report constituted a medical opinion and that the ALJ failed to address the decision. (Doc. No. 14 at 15-16) Nonetheless, the Commissioner argues that the ALJ was not required to discuss Dr. Arlien's report because it predated Bailey's alleged disability onset date and was, therefore, "irrelevant." The Commissioner cites *Heston* and asserts that the "Sixth Circuit has made clear that an ALJ is not required to evaluate a medical opinion that predates the relevant disability period." (Doc. No. 14 at 15-16 citing *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535–36 (6th Cir. 2001)) However, as this Court has previously recognized, *Heston* does not stand for such a broad proposition. *Mitchell v. Comm'r of Soc. Sec.*, No. 1:19-CV-1401, 2020 WL 1316350, at *13 (N.D. Ohio Mar. 12, 2020) (noting *Heston* found failure to consider an opinion issued before onset date *may* be harmless in some cases). Moreover, the Sixth Circuit clarified in a later opinion that it does "not endorse the position that all evidence or medical records predating the alleged date of the onset of disability ... are necessarily irrelevant ...." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006); *see also Caradonna v. Comm'r of Soc. Sec.*, 2019 WL 5549496, at *25 (discussing *DeBoar*d and explaining that "[s]ome courts have therefore found legal error in an ALJ's failure to consider pre-onset evidence or in the ALJs discounting evidence simply because it predated onset"), *report and recommendation adopted*, No. 18-13228, 2019 WL 5538103 (E.D. Mich. Oct. 25, 2019); *Audra E. v. Comm'r of Soc. Sec. Admin.*, No. 2:22-CV-1815, 2023 WL 2633669, at *6 (S.D. Ohio Mar. 24, 2023) (rejecting the Commissioner's argument that the ALJ did not need to address an opinion provided by a medical source because it was authored six months prior to the alleged onset date); *Link v. Comm'r of Soc. Sec.*, No. 1:22-CV-01175, 2023 WL 5043256, at *11 (N.D. Ohio June 8, 2023) (remanding due to ALJ's failure to mention and evaluate medical opinion issued "less than four months before the alleged onset date.") The Commissioner's argument that Dr. Arlien's

March 2019 opinion is irrelevant just because it was issued a few months prior to Bailey's May 2019 onset date is not supported by caselaw.

The Sixth Circuit has not addressed the circumstances under which an ALJ's failure to explain his consideration of the supportability and consistency factors under the regulations, is harmless error. However, this Court has previously applied the test set forth in *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). *See e.g., Musolff v. Comm'r of Soc. Sec.*, 2022 WL 1571864, *13, 2022 U.S. Dist. LEXIS 88910, *39 (N.D. Ohio Apr. 27, 2022) (collecting cases). Under the *Wilson* test, an ALJ's failure to adequately explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can be excused as harmless error only if: (1) the medical opinion is patently deficient; (2) the ALJ adopted the medical opinion or made findings consistent with the opinion; or (3) the goal of the regulation was otherwise met. *Wilson.*, 378 F.3d at 547. The Commissioner has not shown that any of these factors apply and they do not. In a similar context, the Eastern District of Kentucky rejected a harmless error argument. In *Marshall v. Astrue*, the court found that harmless error did not apply where the ALJ ignored two medical opinions on a claimant's mental health. *Id.*, No. CIV. 09-103-ART, 2010 WL 147210, at *4 (E.D. Ky. Jan. 10, 2010) The Court determined that the evidence contradicted the ALJ's findings that the claimant did not have any significant mental health problems and, therefore, needed to be discussed. Similarly here, the ALJ's finding that Bailey did not have any mental health impairments contradicted Dr. Arlien's report and needed to be discussed. The ALJ's failure to do so was not harmless.

In addition to arguing that Dr. Arlien's opinion was "irrelevant" because it predated Bailey's alleged onset date, the Commissioner alternatively argues that the ALJ could discounted Dr. Arlien's opinion because it "used inappropriately equivocal, rather than definitive, language."

(Doc. No. 14 at 16) While the ALJ *could* have done so, there is nothing in the ALJ's decision to indicate that the ALJ did so here. Thus, the Commissioner is engaging in impermissible *post hac* rationalization. The Court notes that it "may not accept [ ] counsel's post hoc rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. Sept. 16, 1993) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 50, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). Moreover, the cases cited by the Commissioner in support of this argument are distinguishable because in the cited cases, the ALJs discussed the medical opinions at issue. Here, the ALJ did not do so.

The ALJ's error in failing to discuss Dr. Arlien's opinion is further compounded by the ALJ's handling of Bailey's mental health limitations as a whole. The ALJ's entire discussion of Bailey's mental health impairments is limited to the discussions of the status agency opinions and is problematic. For example, at the initial level of review, state agency consultant, Jaime Lai, PsyD found Bailey had moderate limitations in his ability to concentrate, persist, or maintain pace and opined that his mental RFC should limit him to simple, routine tasks and "some multi-step tasks that are not paced and do (not) require adherence to strict time and production demands." (Tr. 124) The ALJ found Dr. Lai's opinion was "not persuasive" because Dr. Lai "supports that limitation with reference to the claimant's physical impairments, and she does not identify any diagnosed mental impairment." (Tr. 124 citing Tr. 197, 199-201) However, the court cannot follow the ALJ's reasoning. Dr. Lai did not support her opinion by citing to Bailey's physical impairments and Dr. Lai identified several medically determinable impairments related to Bailey's mental health:  (a) depression, bipolar, and related disorders; (b) anxiety and obsessive-compulsive disorders; and (c) neurocognitive disorders. (Tr. 196) Dr. Lai's discussion of Dr.

27

Arlien's report also acknowledges Bailey's mental health diagnoses. (Tr. 201)  As Dr. Lai identified diagnosed mental impairments and did not rely on Bailey's physical impairments, the ALJ's finding is inaccurate.

The ALJ's discussion of the reconsideration opinion by David Dietz, Ph.D. is also problematic. Dr. Dietz' opined that Bailey has no mental health limitations. (Tr. 125) The ALJ found the opinion " persuasive" and stated that it "consistent with the lack of evidence in the record." (*Id.*) The ALJ further stated that Bailey "failed to attend two consultative mental status exams" and "the record lacks evidence to support any mental health impairment." (Tr. 124-25) The ALJ's statement that the "record lacks evidence to support any mental health impairment" is contradicted by Dr. Arlien's report, as well as the findings of both state agents. Like Dr. Lai, Dr. Dietz' acknowledged that Bailey had several medically determinable mental health impairments (Tr. 227) Dr. Dietz even found those MDIs were "severe." (*Id.*) The ALJ's discussion of the consultative exams also complicates matters. As the Commissioner acknowledges, two consultative exams were scheduled and then cancelled by the Commissioner due to shutdowns related to the COVID-19 pandemic. The ALJ fails to build a logical bridge to his finding that the Commissioner's cancellation of two consultative exams somehow supports Dr. Dietz opinion.

The ALJ's handling of Bailey's mental health limitations requires remand. First, because the ALJ violated agency regulations by failing to mention or discuss the opinion provided by a medical source. Second, the ALJ failed to build an accurate and logical bridge between the mental health limitation evidence and the ALJ's result. On remand, the ALJ should explicitly consider the medical opinion of Dr. Arlien and its persuasiveness. The ALJ should also assess Bailey's mental health RFC and the medical opinions of Drs. Lai and Dietz in light of those findings.[3]

---

[3] In light of the consideration of Dr. Arlien's opinion, the ALJ *may,* but is not required to, reassess his finding that Bailey has a high school education because that finding is supported by substantial evidence  (i.e., multiple

### C. Remaining Arguments

Bailey also argues that (1) the ALJ erred in determining that he retained the RFC for a reduced range of light work; and (2) that the ALJ erred in handling of his lymphedema. In the interest of judicial economy, and because the undersigned has recommended remand to address Bailey's mental health limitations which has the potential to impact Bailey's RFC, Bailey's remaining arguments will not be addressed.

## VII.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that Bailey's request for sentence six remand be DENIED. It is further recommended that the Commissioner's final decision be REVERSED AND REMANDED under sentence four for further consideration consistent with this opinion.


Date:  December 14, 2023                                    *s/ Jonathan Greenberg*
                                                           Jonathan D. Greenberg
                                                           United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**

---

admissions that Bailey graduated from high school). (Tr. 125) SSR 20-01p states the agency "may consider whether an individual received special education" in determining the appropriate educational category, nothing in SSR 20-01p requires the ALJ to find a lesser education category on this basis. In fact, SSR 20-01p states that, the Commissioner "will not find an individual's education category to be lower than his or her highest level of formal education based solely on an individual's history of having received special education." *Id*.